UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALESIA R. MUELLER,

                              Plaintiff,

            -vs-                                  08-CV-214-JTC

SEATAINER TRANSPORT, LTD.,

                              Defendant.

---

Plaintiff Alesia Mueller commenced this action on December 13, 2007, by filing a summons and complaint in New York State Supreme Court, Erie County. She alleges she sustained "severe and serious personal injuries" in a motor vehicle accident which occurred on November 2, 2006, involving a tractor-trailer under the ownership and control of defendant Seatainer Transport, Ltd. ("Seatainer"), a Canadian corporation. Defendant removed the action to federal court pursuant to 28 U.S.C. § 1446 on March 14, 2008, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332.

Following discovery, defendant moved for partial summary judgment on the ground that plaintiff has failed to establish a threshold case of "serious injury" as defined in New York's "no-fault" statute, N.Y. Ins. Law § 5102(d), barring her claim for recovery of damages based on non-economic loss (*i.e.*, pain and suffering) (*see* Item 10). For the following reasons, this motion is denied.

## **BACKGROUND**

As alleged in the complaint, on November 2, 2006, defendant's tractor-trailer collided with plaintiff's 1991 Buick on Interstate 290 in the Town of Amherst, New York,

causing unspecified serious injuries and damages beyond basic economic loss (*see* Item 1-2). Plaintiff testified at her deposition that she was traveling at fifty-five miles per hour on I-290 when defendant's truck rear-ended her car four times before it passed her (Item 10-3, ¶¶ 2-6). She followed the truck to obtain the license number, then drove to the Amherst Police Department to report the incident (*id.* at ¶ 9). Seatainer's only driver in the area that day, Valkar Singh, testified at his deposition that he had no recollection whatsoever of having been involved in a motor vehicle accident on November 2, 2006 (*id.* at ¶ 7 and Ex. B).

After reporting the incident to the police, plaintiff drove to the Emergency Room at Kenmore Mercy Hospital, where she presented with left wrist and neck pain (*see* Item 10-8). X-rays were taken of her cervical spine and wrist, which revealed no acute pathology, fractures, or dislocations (*id.*). She went to see her primary care physician, Dr. Elizabeth Hatton, on Monday, November 6, 2006, complaining of neck pain radiating into her shoulder and arm (*see* Item 14-4). Upon examination, Dr. Hatton found plaintiff to have suffered neck strain, and prescribed Flexeril (a muscle relaxant), Ibuprofen as needed, physical therapy, and no work for the rest of the week (*see id.*).

On November 8, 2006, plaintiff went to see Dr. Julius Horvath, a chiropractor (*see* Item 14). Plaintiff reported sharp pain in her neck, right arm, right wrist, and mid- and lower back, along with headaches. Upon examination, Dr. Horvath found that plaintiff exhibited diminished and restricted range of motion in her cervical and lumbar spine (*id.* at ¶¶ 7-8). Dr. Horvath performed a series of tests, all of which were positive for increasing neck and lower back pain (*id.* at ¶ 9). He concluded that plaintiff was "temporarily totally

incapacitated from her employment as an accounting clerk at AAA" (*id.* at ¶ 11). Dr. Horvath ordered an MRI of plaintiff's cervical spine, which was performed on December 11, 2006. The MRI report indicated a "loss of lordosis with kyphosis and scoliosis at multiple levels," along with bulging discs, disc protrusion, and minor spinal cord deformity (*id.* at ¶¶ 12-13). In Dr. Horvath's opinion, these findings "clinically correlate with her neck pain and limitations and headaches . . . and were caused by the motor vehicle accident of November 2, 2006." *Id.* at ¶ 14.

Dr. Horvath referred plaintiff to Dr. John Pollina of Buffalo Neurosurgery Group, who examined plaintiff on February 2, 2007. Dr. Pollina found some mild tenderness to touch in plaintiff's cervical spine area, and mild limitation of range of motion of her neck, but no limitation of the range of motion of her upper extremities (Item 12-6). His diagnosis was "dominant complaint of cervalgia secondary to her myofascial strain after being rear-ended four times by a semi." *Id.* He recommended that plaintiff continue chiropractic treatments and Ibuprofen, finding no need for surgical intervention. At plaintiff's request, Dr. Pollina "return[ed] her back to full work duty on Monday, 2/5/07." *Id.*

Plaintiff continued to see Dr. Horvath for chiropractic treatment approximately one to three times per week until March 5, 2008 (*see* Item 14, ¶¶ 11-19). In October 2008, she began treatment with Dr. David Ribakove at Elmwood Chiropractic, who saw her at fairly regular weekly intervals until May 2009 (*see* Item 12, Ex. G). She is currently treating with Dr. Gerald Peer for pain management (*see id.* at Ex. H).

Meanwhile, plaintiff filed this action in December 2007 alleging that, as a result of the collision with defendant's truck, she "sustained severe and serious personal injuries

including a 'serious injury' and economic loss greater than 'basic economic loss' as defined by Article 51 of the New York Insurance Reparations Law . . . ." Item 1-2, Complaint, ¶ 17. Seatainer answered, specifically denying that the vehicle identified in the complaint was even in the United States on the date of the alleged accident (*see* Item 3, ¶¶ 7-12). The answer also set forth several affirmative defenses, including the defense that "[p]laintiff has not sustained a 'serious injury' as defined in Section 5102(d) of the Insurance Law of the State of New York." *Id.* at ¶ 23.

During discovery, plaintiff submitted to two independent medical examinations ("IMEs"). The first was performed on November 17, 2008, by Dr. John Ring, defendant's designated orthopedic expert. In his initial report dated that same day, Dr. Ring indicated that plaintiff suffered cervical strain, lower back strain, and a wrist contusion as a result of the November 2006 accident, but was able to work at her job with no restrictions and did not need orthopedic treatment (Item 10-17).

The second IME was performed on January 9, 2009, by Dr. Richard Cowan, defendant's designated neurological expert. Dr. Cowan's report was issued on March 9, 2009, following his review of plaintiff's complete hospital records which were delivered to defense counsel on February 23, 2009 (*see* Item 8). According to Dr. Cowan, during both her deposition and her IME, plaintiff denied involvement in any motor vehicle accidents prior to November 2006, but review of the hospital records revealed that she was treated at Kenmore Mercy for injuries sustained in two prior motor vehicle accidents, "one in 1997 that produced vaginal bleeding that threatened to abort a pregnancy, and one in 2000 following which she complained of neck pain and was brought to the [Emergency

Department] on a stretcher in a cervical collar. It is not credible that [plaintiff] could have forgotten these dramatic events" (Item 10-16, p. 19). Dr. Cowan further concluded:

> Taking account of all information available in medical and chiropractic records and the history I obtained and the physical examination I performed, I conclude that the [November 2, 2006] accident probably resulted in symptoms in the neck and wrists, symptoms for which physicians commonly use the words "strain" or "sprain," as they did in this case. . . . Symptoms at the wrists improved rapidly. Symptoms in the neck have persisted much, much longer than usual, but there is no objective evidence that demonstrates the reality of those symptoms. It is only [plaintiff]'s report that is evidence of their presence.

*Id.* at p. 20.

On February 24, 2009, following his review of plaintiff's hospital records, Dr. Ring issued an addendum to his initial report, stating as follows:

> The patient was also involved in a motor accident on June 25, 2000. . . . She complained of pain, at that time, in her neck, her upper chest, her right wrist, and her left wrist. She was noted to have tenderness in her left and right wrist and clavicle, and also in the midline and cervical spine. . . . Finally, there is another motor accident on May 24, 1997. Apparently she was pregnant at that time, and the main problem . . . was vaginal bleeding. . . .
>
> In reviewing these files, it is clear that the patient had a preexistent injury to her cervical spine and wrist on June 25, 2000. As to how much difficulty she had subsequently, I do not know, but it is obvious that the patient did have an injury to her cervical spine on June 25, 2000, prior to the motor vehicle accident for which I examined her . . . dated November 2, 2006. . . . The patient may have had prior problems with her neck before the injury of 2006; however, I do not know what transpired after the motor accident of June 25, 2000, as far as her medical problems.

(Item 10-17). In an additional supplement dated March 16, 2009, Dr. Ring advised that he could not "state with a reasonable degree of medical certainty what injuries are causally related to the accident of November 2, 2006 and what injuries are related to the prior accident in 2000." *Id*.

Following receipt of these reports, defense counsel moved for summary judgment on the ground that the evidence produced during discovery is insufficient as a threshold matter to establish a case of "serious injury" under New York's "no-fault" statute. For the reasons that follow, this motion is denied.

## DISCUSSION

**I.      Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and the moving party shows that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). An issue of fact is material if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991).

In reaching a summary judgment determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162,167 (2d Cir. 1991). The moving party bears the initial burden of establishing that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once this initial showing is made, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations are insufficient and "[t]here must be more than a 'scintilla of evidence'" to defeat a motion for summary

judgment. *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Manufacturing Co., Inc. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005).

II. **The "Serious Injury" Threshold Under New York's "No-Fault" Law**

New York's "no-fault" law was enacted in 1973 to promote prompt resolution of personal injury claims resulting from motor vehicle accidents, to limit costs to consumers, and to alleviate burdens on the courts. *Pommells v. Perez*, 4 N.Y.3d 566, 570-71 (2005). Under this statute, a plaintiff is precluded from recovering for non-economic loss resulting from a motor vehicle accident unless the plaintiff can demonstrate that he suffered a "serious injury," defined as:

> [A] personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d). "Tacit in this legislative enactment is that any injury not falling within [this definition] is minor and a trial by jury is not permitted under the no-fault system." *Licari v. Elliott*, 57 N.Y.2d 230, 235 (1982).

The New York Court of Appeals in *Licari* determined that the trial court should decide in the first instance the threshold question of whether the evidence would support a jury finding that the injury complained of falls within the statutory definition. "If it can be said, as a matter of law, that plaintiff suffered no serious injury within the meaning of [§ 5102(d)], then plaintiff has no claim to assert and there is nothing for the jury to decide." *Id.* at 238.

The courts have established a framework for making this threshold determination on a motion for summary judgment. The defendant has the initial burden to establish a *prima facie* case that the plaintiff has not sustained a serious injury within the meaning of the statute. *See Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992). In order to meet this burden, the defendant may rely on the medical evidence, including unsworn reports by plaintiff's treating physicians, *see McGovern v. Walls*, 201 A.D.2d 628, 607 N.Y.S.2d 964, 965 (2d Dep't 1994), or sworn affidavits or affirmations by the defendant's own retained physicians and experts. *See Marsh v. Wolfson*, 186 A.D.2d 115, 115-16, 587 N.Y.S.2d 695, 696 (2d Dep't 1992).

If the defendant makes this *prima facie* showing, the burden then shifts to the plaintiff to defeat the motion by submitting sworn affidavits or affirmations by her physicians that support her claim of serious injury. *See Gaddy*, 79 N.Y.2d at 582; *Rand v. Volvo Fin. N. Am.*, 2007 WL 1351751, at *11 (E.D.N.Y. May 8, 2007). These submissions must

contain "quantitative evidence from an expert . . . or an expert's qualitative assessment, based on objective evidence," regarding the nature and extent of the injury. *Clifford v. Burlington Motor Carriers, Inc.*, 2008 WL 268289, at *7 (E.D.N.Y. January 29, 2008); *see also Shamanskaya v. Ma*, 2009 WL 2230709, at *5 (E.D.N.Y. July 24, 2009). Assessments or opinions based on subjective complaints of pain alone are insufficient to meet the serious injury threshold. *Toure v. Avis Rent A Car Systems, Inc.*, 98 N.Y.2d 345, 350 (2002); *see also Eldred v. Stoddard*, 217 A.D.2d 952, 953, 630 N.Y.S.2d 171, 171 (4th Dept. 1995). In addition, the New York Court of Appeals has concluded that, "even where there is objective medical proof, when additional contributory factors interrupt the chain of causation between the accident and claimed injury–such as a gap in treatment, an intervening medical problem or a preexisting condition–summary dismissal of the complaint may be appropriate." *Pommells*, 4 N.Y.3d at 572.

In this case, defendant relies on the expert reports of Dr. Cowan[1] and Dr. Ring to make its *prima facie* showing. Based on the results of his neurological IME, Dr. Cowan found it "probabl[e]" that the November 2, 2006 accident resulted in some level of "strain"

---

[1] It is noted here that Dr. Cowan's report is unsworn, and as such is not ordinarily considered to be admissible evidence in support of a summary judgment motion based on the plaintiff's failure to establish "serious injury" under the no-fault statute. *See, e.g.*, *Pagano v Kingsbury*, 182 A.D.2d 268, 270, 587 N.Y.S.2d 692, 694 (2nd Dep't 1992) (when defendant relies solely on findings of its own medical witnesses, those findings must be in admissible form, *i.e.*, affidavits or affirmations, and not unsworn reports). However, plaintiff's submissions in opposition to defendant's motion contain no specific objection to the admissibility of Dr. Cowan's report, which the New York courts have found to result in a waiver of the affidavit/affirmation requirement. *See Shinn v. Catanzaro*, 1 A.D.3d 195, 197 (1st Dep't 2003) (citing cases).

Dr. Ring's report and addenda each contain his affirmation of truth and accuracy under penalty of perjury, which "may be served or filed in the action in lieu of and with the same force and effect as an affidavit." N.Y.C.P.L.R. § 2106.

or "sprain" in plaintiff's neck and wrists. However, Dr. Cowan found "no objective evidence that demonstrates the reality of those symptoms. It is only [plaintiff]'s report that is evidence of their presence." Item 10-16, p. 20. According to Dr. Cowan, the credibility of plaintiff's subjective statements has been cast into doubt by her "coarsely inaccurate statements" regarding preexisting injuries resulting from prior motor vehicle accidents, her medical history in general, and the events surrounding the occurrence of the accident itself. *Id.* at 19.

Based on his orthopedic IME, Dr. Ring initially concluded that plaintiff's cervical strain, lower back strain, and wrist contusion resulted from the November 2006 accident. However, after receiving and reviewing the complete medical record, he revised his opinion to reflect that he could not state with a reasonable degree of medical certainty what injuries were causally related to the November 2006 accident and what injuries were related to the June 2000 accident. *See* Item 10-17.

In the court's view, the opinions set forth in these expert reports are sufficient to establish a *prima facie* case that plaintiff's injuries do not fall within the no-fault statute's definition of "serious injury." *See Brusso v. Imbeault*, 2010 WL 1010447, at *8 (W.D.N.Y. Mar. 16, 2010) (stating physician's independent medical examination report is sufficient to satisfy defendant's initial burden to show there was no serious injury within meaning of statute). Therefore, "the burden shifts to plaintiff to offer proof, in admissible form, which creates a material issue of fact requiring a trial." *Shaw v. Looking Glass Assocs., LP*, 8 A.D.3d 100, 102, 779 N.Y.S.2d 7, 9-10 (1st Dep't 2004). Plaintiff's evidentiary showing must come in the form of "objective medical proof of a serious injury causally related to the

accident in order to survive summary dismissal." *Pommells*, 4 N.Y.3d at 574; *see also Lopez v. Abdul-Wahab*, 67 A.D.3d 598, 599, 889 N.Y.S.2d 178, 179 (1st Dep't 2009) ("The report of plaintiff's expert was, in the absence of objective, contemporaneous evidence of the extent and duration of the alleged physical limitations resulting from the injury, insufficient."). Plaintiff's expert must also address any other intervening factors which interrupt the causal chain between the accident and claimed injury, such as a pre-existing condition. *See, e.g., Style v. Joseph*, 32 A.D.3d 212, 214, 820 N.Y.S.2d 26, 28 (1st Dept. 2006) ("Where, as here, plaintiff sustained injuries as a result of accidents or incidents that preceded the accident giving rise to the litigation, plaintiff's expert must adequately address how plaintiff's current medical problems, in light of her past medical history, are causally related to the subject accident.") (citing cases).

Plaintiff contends that there is sufficient objective medical evidence in the record to satisfy the threshold burden with respect to three separate categories of section 5102(d): permanent consequential limitation of use of a body organ or member, significant limitation of use of a body function or system, and a medically determined nonpermanent injury which prevented plaintiff from performing substantially all of her customary daily activities for 90 of the first 180 days following the accident. The first two categories of serious injury, permanent consequential or significant limitation of use, "are often analyzed together." *Sanchez v. Travelers Cos., Inc.*, 658 F. Supp. 2d 499, 510 (W.D.N.Y. 2009). For these two categories, the New York Court of Appeals has held that "whether a limitation of use or function is 'significant' or 'consequential' . . . relates to medical significance and involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." *Id.* (quoting *Toure*, 98 N.Y.2d at 353).

Plaintiff relies on the sworn affidavit of her treating chiropractor, Dr. Horvath, who saw plaintiff one to three times a week between November 2006 and March 2008 (Item 14-1, ¶ 19). He first examined plaintiff six days after the accident, on November 8, 2006. She reported significant pain, numbness, and sleep difficulty. Range of motion tests revealed diminished and restricted range of motion in the area of her cervical and lumbar spines (*Id.* at ¶ 7). He also performed several other clinical musculoskeletal tests including "cervical compression, cervical distraction, Jackson's, O'Donahues [sic], all of which were positive for increasing the neck and/or low back pain" (*Id.* at ¶ 9). Plaintiff also completed the "Roland Morris Disability Index," indicating several categories of lumbar spine limitations (*Id.* at ¶ 10; *see also* Item 14-5). Dr. Horvath ordered a MRI of plaintiff's cervical spine, which showed curvature at multiple levels, bulging and protruding discs, and other spinal disorders (Item 14-1, ¶¶ 12-13). In Dr. Horvath's opinion, "to a reasonable degree of chiropractic certainty, these findings were present and clinically correlate with her neck pain and limitations and headaches . . . and were caused by the motor vehicle accident of November 2, 2006." *Id.* at ¶ 14. Based on these findings, as well as his observation of the treatment plaintiff received under his care and his review of plaintiff's medical history–including the available records of treatment following the two prior motor vehicle accidents in 1997 and 2000–Dr. Horvath concluded that plaintiff "sustained a significant limitation of use of a body function composed of her cervical spine" (*id.* at ¶ 21), and "was disabled from performing substantially all her normal daily activities for more than 90 out of 180 days following the accident" (*id.* at ¶ 22), as a result of the November 2, 2006 collision. According to Dr. Horvath:

> [Plaintiff]'s condition is permanent and she will continue to suffer into the future. She sustained herniations and disc bulges to her cervical spine that are causing and will continue to cause significant pain and limitation in the movement of her cervical spine. These limitations and injuries have been objectively shown through my physical examinations, and the diagnostic testings performed, mainly the cervical MRI and the EMG testings.

*Id*. at ¶ 23.

Defendant contends that Dr. Horvath's assessment failed to directly address the issue of plaintiff's pre-existing medical condition due to her involvement in the two prior motor vehicle accidents, rendering his conclusions regarding the causal link between the November 2006 accident and the injuries complained of too vague to meet the statutory requirements of section 5201(d) (*see* Item 15, p. 4). The record, however, suggests otherwise.

In his affidavit, Dr. Horvath states that he reviewed the emergency room records for both the 1997 and 2000 accidents, as well as the records of plaintiff's treatment with Dr. Hatton following the 2000 accident (*see* Item 14-1, ¶¶ 5-6). Dr. Horvath noted that the emergency room records relating to the 1997 accident listed plaintiff's complaints as vaginal bleeding and pain in her abdomen and right lower rib, showing "nothing that relates to her current complaints of neck pain, lower back pain, headaches and right wrist pain." *Id.* at ¶ 5. With regard to the June 2000 accident, the medical records revealed that plaintiff received emergency room treatment for pain in her wrists, right hand, right upper chest and neck, and followed up with Dr. Hatton, but had not been symptomatic for at least three years prior to the November 2006 accident (*see id.* at ¶ 6). Considering this assessment, and drawing all reasonable inferences in favor of plaintiff, a rational jury could conclude that plaintiff's pre-existing condition resulting from injuries sustained in the prior

accidents did not interrupt the causal connection between the 2006 accident and the injuries alleged in the complaint.

Based on this analysis, the court concludes that Dr. Horvath's affidavit provides an adequate qualitative assessment, in admissible form, of the available objective evidence regarding plaintiff's medical condition sufficient to support a jury finding that the injuries complained of are causally related to the November 2006 accident. Accordingly, plaintiff has sustained her *prima facie* burden of demonstrating that she suffered "serious injury" within the meaning of New York Insurance Law § 5102(d), and defendant is not entitled to summary judgment dismissing the complaint.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for partial summary judgment (Item 10) is denied.

A telephone conference is scheduled for August 16, 2010, at 11 a.m. to discuss a schedule for further proceedings in this matter. The court will initiate the call.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: July 29 , 2010
p:\pending\2008\08-214.july14.10